STEPHEN SMITH, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 2, 1907, and March 2, 1908.

1. NEGLIGENCE: Contributory Negligence: Humanitarian Doctrine: Pedestrian on Railroad Track. An engineer ordinarily has a right to assume that one on the track will leave it at the approach of the train; that assumption, however, is based on the pedestrian being aware of the train's approach, and if the situation is enough to suggest to a reasonably prudent person that he is not aware, then the assumption should not be indulged.

2. ———: ———: ———: ———: Evidence. Evidence relating to the striking of an aged negro man on a cold, windy, snowy morning, having his head wrapped and being stooped over, by a train in a town running in excess of the ordinance speed, is reviewed and held sufficient to send the case to the jury on the humanitarian doctrine and to justify the finding that the trainmen were aware of his peril in time by reasonable effort, to have avoided the injury.

3. ———: ———: ———: Petition: Objection to Evidence. A petition is held sufficiently comprehensive to warrant a recovery on the humanitarian doctrine against an objection to the introduction of evidence.

4. INSTRUCTIONS: Comment on Evidence: Explanation: Admission. An instruction that plaintiff being present and not testifying in his own behalf in court is bound by the evidence of the witness given in his hearing and not disputed by him being a comment on the evidence is properly refused.

5. ———: Criticism Taken as a Whole. Though an instruction by itself may be the subject of criticism, yet if read in connection with the whole series it is apparent there was no mis-

understanding on the part of the jury as to proper issues and their relation, it is harmless. *Held*, further the whole series present all the issues in a reasonable manner to the jury.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*J. L. Minnis, H. F. Millan* and *Higbee & Mills* for appellant.

(1) The court erred in refusing to direct a verdict for defendant at the close of plaintiff's evidence, as also at the close of all the evidence. Skipton v. Railroad, 82 Mo. App. 143; Brockschmidt v. Railroad (Mo.), 103 S. W. 966, 968; Grout v. Railway, 102 S. W. 1027; White v. Railway, 84 Mo. App. 420; Sinclair v. Railroad, 133 Mo. 233; Clancy v. Railroad, 192 Mo. 652; Tanner v. Railroad, 161 Mo. 512; Walker v. Railroad, 193 Mo. 481; Mockowik v. Railroad, 196 Mo. 572; Bell v. Railroad, 72 Mo. 59; Railway v. Smith, 86 Fed. 292, 40 L. R. A. 746; Fanning v. Railroad, 103 Mo. App. 157; Bennett v. Railway, 122 Mo. App. 703. (2) The court erred in admitting any evidence over defendant's objection. The petition does not state, nor does the evidence make, a case under the humanitarian doctrine, nor on any other theory. Grout v. Railway, 102 S. W. 1029; Bennett v. Railway, 122 Mo. App. 713; Cole v. Railway, 121 Mo. App. 613; Winn v. Railway, 121 Mo. App. 625; Clancy v. Transit Co., 192 Mo. 652; Brockschmidt v. Railroad, 103 S. W. 966; Dlauhi v. Railroad, 105 Mo. 654; Moore v. Railway, 176 Mo. 542. (3) The court erred in giving plaintiff's fourth instruction. Railway v. Mathews, 93 S. W. 1068; Railway v. Saunders, 103 S. W. 460; Newcomb v. Railway, 169 Mo. 428; Payne v. Railway, 129 Mo. 419, 136 Mo. 590; Schmidt v. Railroad, 191 Mo. 235; Green v. Railway, 192 Mo. 131; Tanner v.

Railway, 161 Mo. 510; Brockschmidt v. Railway, 103 S. W. 966; Stotler v. Railway, 103 S. W. 7; Moore v. Railway, 176 Mo. 547; Hafner v. Transit Co., 197 Mo. 199; Jackson v. Railroad, 157 Mo. 621; Sullivan v. Railroad, 117 Mo. 224; Payne v. Railroad, 136 Mo. 590; Prewitt v. Eddy, 115 Mo. 304; 2 Thomp., Neg., secs. 1770, 1775, 1889; 21 Am. & Eng. Ency. Law (2 Ed.), 483; Adams v. Machine Co., 110 Mo. App. 374; Mockowik v. Railroad, 196 Mo. 564; Schmidt v. Railroad, 191 Mo. 236; Green v. Railroad, 192 Mo. 131; State to use v. Railroad (Md.), 11 L. R. A. 443; Railroad v. Webb (Ala.), 11 L. R. A. 674; Neal v. Railroad (N. C.), 49 L. R. A. 684; Mitchell v. Railway, 122 Mo. App. 50. (4) Plaintiff's instruction number 4 was manifestly in conflict with instruction 14 and others given for defendant, and nullified their effect. Such repugnant instructions afford no guide to the jury, nor can it be presumed that they follow one rather than the other. Moreover it purported to cover the whole case and directed a finding. Linn v. Bridge Co., 78 Mo. App. 188. (5) The court erred in giving plaintiff's first instruction. Little v. Hackett, 116 U. S. 371; Zumault v. Railroads, 175 Mo. 312; White v. Railway, 84 Mo. App. 420; Railroad v. Black, 89 Ala. 313. (6) It seems clear, therefore, there is no distinction, whether a pedestrian be walking on the track or passing over a public crossing; the law of contributory negligence and discovered peril is the same in either case. Ayers v. Railroad, 190 Mo. 238. (7) The court erred in refusing defendant's instruction 3. Raines v. Railroad (W. Va.), 24 L. R. A. 226; Bennett v. Railway, 122 Mo. App. 703, and cases cited under point 2; Railroad v. McClaren, 62 Ind. 572; Campbell v. Railroad, 55 Kan. 536; Railroad v. Miller, 25 Mich. 274. (8) The court erred in refusing defendant's instructions 6, 7, 8, 9, 10 and 11.

*James E. Rieger* and *Alexander Doneghy* for respondent.

(1) The court committed no error in refusing to direct a verdict for defendant at the close of all the testimony, as there was ample evidence for the jury to find a verdict for plaintiff on either the humanitarian doctrine or for negligence in violating the speed ordinance. Railroad v. Patterson (Tex.), 102 S. W. 138; Railroad v. Munn (Tex.), 102 S. W. 442; Eppstien v. Railway (Mo.), 94 S. W. 967; Jackson v. Railway, 157 Mo. 622; Murrell v. Railway, 105 Mo. App. 88. (2) The court did not commit error in admitting evidence over the objection of defendant, as the petition states a cause of action under both the humanitarian doctrine, and for violation of the speed ordinance. Authorities supra; Morgan v. Railroad, 159 Mo. 262; Rayburn v. Railroad, 187 Mo. 565; Holden v. Railroad, 177 Mo. 456. (3) The court did not err in giving plaintiff's fourth instruction as that instruction correctly states the law applicable to the evidence in the case. Authorities supra; Powell v. Railroad, 59 Mo. App. 626. (4) Plaintiff's instruction number four correctly states the law and if it was repugnant to defendant's number fourteen, which we contend is not the case, yet defendant can not complain as it was error invited by itself. Summer v. Insurance Co., 90 Mo. App. 701. (5) The court did not err in giving plaintiff's first instruction, in not telling the jury that they must find "that the engineer knew or could have known that the respondent was oblivious, etc.," as all such error, if there was any error, and we hold there was not, was cured by appellant's instructions 19 and 20. The instruction was well enough and in no wise prejudicial. Land and Lumber Co. v. Moss, 87 Mo. App. 177; Railroad v. Munn, 102 S. W. 442. (6) There was no error in refusing appellant's instruction number 3. Railroad v. Munn, 102 S. W. 442. (7) The court committed no error in

refusing any of appellant's instructions as the instructions given for both plaintiff and defendant taken all together presented every feature of the case to the jury. And any and all omissions to instruct on points claimed by appellant was supplied and covered by its own instructions. Perette v. Kansas City, 162 Mo. 249; Land Co. v. Moss, 87 Mo. App. 177.

ELLISON, J.—This action was instituted to recover damages for personal injuries received by plaintiff through the alleged negligence of the defendant. He prevailed in the trial court.

Plaintiff is an old negro man who has lived in Kirksville for about forty years, and for a time prior to the day he was hurt he lived near the railway track and was familiar with the manner in which defendant's trains came into the city and the speed with which they approached the station. Early on the morning of his injury, in January, 1905, he had been up in the business section of the city sweeping offices and making fires for different persons, and was returning home. His way took him along the railway track which for many years had been used by the general public as a walk for pedestrians going west and then south from the business section of the town, or south from the station. There was a heavy snow and the morning was cold with a brisk wind from the north. There was a comforter around his neck and head and he had a habit of walking in a somewhat stooped way with his head so inclined as to put him in the position of looking down and only a short distance in advance. In this condition he went upon the defendant's track and went south from the station. It had once been suggested to him by some acquaintance that there was danger in using the track for a passway, but he replied: "The good Lord will take care of me." Defendant's passenger

train was due from the south at this time and shortly after plaintiff got upon the track it made its appearance more than a quarter of a mile further south. There was nothing to obstruct a clear view of the train by plaintiff had he been looking, or of plaintiff by the engineer. Plaintiff apparently did not see the train, but the engineer saw him and saw that he came on towards the train. He began to sound the whistle, first for a crossing, but plaintiff did not look up and paid no heed. The snow on the ground and the stiff wind from the north presumably prevented his hearing the noise of the train; and the wind, aided by his comforter around his ears, perhaps kept away the sound of the whistle. The engineer continued to give the alarm with no effect; but singular enough, did not slacken the speed of the train, which was far in excess of the ordinance limit. And thus the train came rapidly up towards the station and approaching plaintiff with nothing in use but the "service brake," which is used to slacken speed in approaching stations. The engineer permitted the train to run, with no effort to get it under control, until within about twenty-five feet of plaintiff when he applied the emergency brake, but too late to prevent the engine striking him, knocking him from the track and doing him serious injury, from which he became blind and is now in the poorhouse. The train's speed may be judged somewhat by the fact that with the use of the emergency brake, it still ran some three hundred feet beyond the point of collision.

It is clear to us that conceding plaintiff was negligent, yet a case was made for the finding of a jury under what is known as the humanitarian rule. We may omit evidence in plaintiff's behalf which was disputed and only look to that given for defendant, connected with that in plaintiff's behalf which is undisputed, and yet find the trial court justified in refusing to declare as a matter of law that no case was made. It was es-

tablished that the public had for many years used the track as a passway. It was the only walk between certain streets.    Defendant's servants then should have had that fact in view in so governing the train as to have it under control.   It was established that the ordinance speed was five miles per hour, and that the train that morning was running much faster than that rate.   It was further shown by the defendant's engineer himself, that he saw plaintiff upon the track and while he stated that after he sounded the alarm he noticed that plaintiff stepped over the rail as though to get off, he further stated the engine was then within fifty or sixty feet of him.   Shortly further on in his testimony, he stated that he did not apply the emergency brake until "about the time when I struck him."   It seems quite apparent that the evidence tends to show that defendant's servants after becoming aware of (or as ordinarily reasonable and prudent men they should have realized), plaintiff's peril, they did not use ordinary care to save him.

It was not necessary to plaintiff's case that defendant's servants should have had absolute knowledge that plaintiff was in peril, for such state of information could scarcely exist in such situation.   So therefore defendant will not be permitted to indulge in unreasonable suppositions as to the probability of plaintiff moving out of danger although apparently oblivious to it, with the engine nearly upon him.   An engineer ordinarily has a right to assume that one on the track will leave it at the approach of a train.   But that assumption is based upon the person being aware of the train's approach, and if the situation is enough to suggest to a reasonably prudent person that he is not aware, then the assumption should not be indulged. [Klockenbrink v. Railway, 172 Mo. 678-689.   In Railway v. Munn, 102 S. W. 442 (Texas), Munn, who was deaf, was walking on the railroad track towards an

approaching train. He was in the view of the engineer for two thousand feet and nothing hindered his seeing the train. When within six hundred feet the engineer began to sound the alarm, which did not attract Munn's attention. The engineer then applied the emergency brake, but so near that Munn was struck and killed. In speaking of the duty of the engineer under the humanitarian rule the court said: "The authorities, when rightly construed, are one on the proposition that, in order to give rise to this new duty resting upon the discovery of peril, it is not requisite that the engineer must know that disaster is inevitable unless he himself can avert it. It is enough if he knows that the person injured was in a place of danger from which he probably could not or would not extricate himself in time. [Railway v. Hanna, 34 Tex. Civ. App. 608, 79 S. W. 639, and authorities cited.] In a legal sense and in point of fact it is accurate to say that the peril of one in Munn's position consisted of his ignorance, for there was no time up to within a few feet of the train when he might not have saved himself had the knowledge of its approach been borne in upon his senses. The engineer could not have foreseen with certainty that Munn would not discover the train in time. Nor could he have foreseen that Munn might not leave the track for some purpose other than his safety, and still without knowledge of the train's approach. No more might an engineer actually know that one lying on the track asleep or in a swoon might not be merely pretending sleep, or, if asleep, that he would not be awakened by the signals made to arouse him. Yet it would scarcely be contended that one thus asleep or in a swoon was not in peril merely because at the last moment he awakened or recovered from his swoon and saved himself, nor would the contention be allowed for a moment that the engineer who saw him in time to stop the train would be permitted to continue his

course on the chance that the man would be aroused, and thus induced to save himself. The rule which in such cases imposes a duty to another notwithstanding his fault is a rule arising from the dictates of humanity, and so with knowledge of another's peril an engineer will not be permitted to leave to chance or accident the safety of his life or limb when a sure means of saving him is in the hands of the engineer. [Railway v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1111.] To require proof that the engineer actually knew that the deceased would inevitably be killed unless the engine was stopped, and that he nevertheless continued his course, would be to require that a case of murder be established, and in our opinion it is not necessary that the proof should fasten upon the engineer any act or omission involving moral turpitude. Nor, on the other hand, do we allow the proposition that he may speculate on the chances of one leaving the track until too late for the effective use of the means at hand after knowledge of peril. To allow such a doctrine would abrogate the rule of liability in all cases, save where the situation of the person on the track rendered it manifestly impossible for him to do aught for himself. If it appears from the evidence that the engineer realizing that deceased was ignorant of the approach of the train, and therefore would not probably leave the track, the new duty thereby arose, and for the engineer's failure to discharge it the company is liable."

We therefore say that in view of the evidence the jury can be justified in finding that defendant's servants were aware of his peril in time, by reasonable effort, to have avoided the injury. The cases of Morgan v. Railway, 159 Mo. 262, and Murrell v. Railway, 105 Mo. App. 94, bear resemblance to this in many particulars and are authority for the action of the trial court in the ruling made on the demurrer to the evidence.

It is contended by defendant that facts sufficient

to sustain a cause of action under the humanitarian doctrine are not stated in the petition. No demurrer was filed before trial, though objection was made to receiving evidence on the ground that no cause of action was stated. In these circumstances we must make every reasonable intendment in favor of the petition which its allegations will justify. While it would have been better to have made clearer and more direct allegations of fact to put the case within the humanitarian rule, yet we are satisfied that the petition is sufficiently comprehensive in statement of facts to place the case within that rule as it is recognized in this State. [Reyburn v. Railway, 187 Mo. 565; Morgan v. Railway, 159 Mo. 262.] It is not necessary that the plaintiff should call upon the rule by name. [Meng v. Railway, 108 Mo. App. 553, 564.]

The defendant asked an instruction, which was refused, "that plaintiff being present and not testifying in his own behalf in court is bound by the evidence of witnesses given in his hearing and not disputed by him." The bill of exceptions does not in terms note the presence of plaintiff. It can be seen from the testimony of one or more witnesses that he was present at the opening of the trial but left before the defense was heard, he being in quite poor condition. And so it is stated by counsel. His evidence at a former trial was read to the jury. It is insisted that the instruction should have been given. The record as a whole does not show the presence of the plaintiff. But be that as it may, we do not believe the law would have justified granting the instruction. It is supported by Payne v. Railway, 136 Mo. 562, 594, but the authority of that case has been broken by subsequent decisions. The ground for holding plaintiff to be bound by adverse evidence which he fails to explain or dispute in testimony of his own, is that it is an admission. But if he had testified, what he said against his interest would

not necessarily have concluded him. His testimony, in connection with the other evidence in the cause, would be for the jury. We so held in Ephland v. Railway, 57 Mo. App. 147, 162. And so it has lately been several times decided by the Supreme Court. [Zander v. Transit Co., 206 Mo. 445, 103 S. W. Rep. 1006; Conner v. Railway, 181 Mo. 397; Sheperd v. Transit Co., 189 Mo. 362, and by this court in Brown v. Railway, 127 Mo. App. 614.] Of course, a party, in giving his testimony, may make a distinct admission of a specific fact which is material to the issue on trial, and be bound by it. But an instruction which says to a jury, in general terms, that they may go through the testimony given by a party and select out what they consider to be against his interest and set it down as absolutely true, might result in improper deductions and conclusions as to what was or was not against his interest, and cause a miscarriage of justice. Such instructions in civil cases, as said in Zander v. Transit Co., *supra*, "are a direct comment upon the weight of the plaintiff's testimony and are not to be tolerated."

There were a number of instructions given. Excluding those as to form of verdict, there were five for the plaintiff and ten for the defendant. They covered every phase of the case. Some of those for defendant were perhaps more liberal in its behalf than the evidence, especially that of the engineer himself, justified. Earnest objection is made to the fourth given for plaintiff, and, standing alone, it is not free from criticism. But when read in connection with the whole series, it is quite apparent that it could not have caused a misunderstanding on the part of the jury as to the proper issues and the relation that the issues bore to each other. The instruction relates to the speed of the train in excess of the rate prescribed by the city ordinance and directed a verdict for the plaintiff if such excess of speed was the direct cause of the injury and that it

would not have happened but for such speed. The complaint is that it omits an hypothesis of plaintiff's negligence. But five of defendant's instructions were devoted to an explanation of that part of the case relating to the speed in excess of the ordinance. The jury were informed and directed that excess of speed would not be of any help to the plaintiff; on the contrary the verdict would be for the defendant if he could see the train or hear the signals and the engineer believed he would get off the track. That if plaintiff's own negligence caused the injury "then it made no difference that the train was running at a greater rate of speed than five miles per hour." That if the defendant had habitually violated the speed ordinance and plaintiff was aware of such habit, then he had no right to rely upon defendant's running at the prescribed rate the morning he was hurt. It is clear, that allowing the jury to be men of common sense, they could only have understood that if plaintiff was legally chargeable with negligence, then the speed of the train in exceeding five miles per hour was *not* "the direct cause of said injury," and the injury might have occurred even though the speed had been within the ordinance limit.

The record as presented here seems to disclose that as a matter of fact the case was determined on the proposition whether the striking of plaintiff could have been avoided after the engineer became aware of his position of peril, and on that issue the plaintiff's first and defendant's last instruction properly covered the case.

The objection to plaintiff's first instruction is not well taken. Nor do we see any just ground for complaint as to instructions refused. All that were proper were sufficiently covered by those given.

A careful examination of the entire record fails to disclose anything which would justify us in disturb-

ing the judgment, and it is accordingly affirmed. All concur.

