RESETTA KEELE, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 7, 1910.

1. RAILROADS: Foreign Statutes: Death at Crossing. Plaintiff and her husband sued for damages for death of their minor child at a railroad crossing in the State of Kansas. After suit was brought, but before trial, the husband died, and plaintiff proceeded in her own name and obtained judgment. *Held*, that under the Kansas laws, where one of the plaintiffs, suing as next of kin, dies during the pendency of the suit, his interest does not abate and should be represented in the action by those entitled by law to receive the proceeds, but this defect of parties was waived by defendant in answering to the merits and not standing on its demurrer.

2. ———: Contributory Negligence: Humanitarian Rule: Crossing. Where a pedestrian approaching a crossing is in a position to see and hear an approaching train, the mere fact that he may continue to approach the danger line is no indication that he will not stop in time, and calls for no duty on the part of the trainmen, but where he is oblivious of the fact that the train is coming, and exhibits in some way his own lack of reasonable care, then the humanitarian rule imposes a duty on the operators of the train to take steps to stop the same or give warning of its approach.

3. ———: Instruction. The first instruction was erroneous. It was not enough for the jury to find that an ordinary careful and humane person in the position of engineer or fireman should have discovered the deceased approaching the track in time to have sounded a warning, but they should have been required to find further that such hypothetical person should have seen that she was oblivious to her danger, and if not warned would place herself in the way of the train.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

REVERSED AND REMANDED.

*Thomas R. Morrow, Cyrus Crane, J. P. Gilmore* and *John H. Lathrop* for appellant.

(1) Upon the entire record the deceased was guilty of such negligence, or contributory negligence, that no recovery can be sustained in this case, irrespective of anything that is or might be pleaded. Schaub v. R. R., 133 Mo. App. 444; Duncan v. R. R., 46 Mo. App. 199; Lien v. R. R., 79 Mo. App. 475; Jones v. Barnard, 63 Mo. App. 501; Drake v. R. R., 51 Mo. App. 562; McGee v. R. R., 214 Mo. 530; Reardon v. R. R., 114 Mo. 384; Caldwell v. R. R., 58 Mo. App. 453; Sites v. Knott, 197 Mo. 684. (2) The plaintiff was not entitled to have and maintain this action in her own name alone, and the judgment cannot, therefore, stand. Packard v. R. R., 181 Mo. 421; James v. Christy, 18 Mo. 162; Behen v. Transit Co., 186 Mo. 447; Gamble v. Daugherty, 71 Mo. 599; Murphy v. Redmond, 46 Mo. 317. (3) Even if the case were one which should have been submitted to the jury (which we deny), plaintiff's instruction number one is manifestly erroneous, and the verdict and judgment cannot stand. See authorities under Point 1. Railroad v. Scoville, 81 Mo. 434; Maher v. Railroad, 64 Mo. 267; Rine v. R. R., 88 Mo. 392; Zimmerman v. R. R., 71 Mo. 476; Nelson v. R. R., 68 Mo. 593; Isable v. R. R., 60 Mo. 475. (4) The verdict as reduced by the court is excessive. Hickman v. R. R., 29 Mo. App. 347; Marshall v. Mining Co., 119 Mo. App. 270; Stolckman v. R. R., 15 Mo. App. 509; Parsons v. R. R., 94 Mo. 509.

*Bird & Pope* for respondent.

(1) Plaintiff was not debarred on account of her approaching and going on the track of the defendant without seeing or hearing the oncoming train no warning signals were given by the employees of the defendant in charge of the approaching train. The deceased

never, at any time, after she could have seen the train, looked west, but was looking south, with her hand on her hat, holding it on until she was struck by the train. It was the duty of the engineer and fireman of the defendant to keep a vigilant lookout ahead for the deceased and to discover her approaching the track if they could do so by the exercise of ordinary care on their part. Kinlen v. R. R., 216 Mo. 145; Holmes v. R. R., 207 Mo. 149. Engineer must keep a vigilant watch for persons not only on, but approaching the track. Deschner v. R. R., 200 Mo. 311. Motorman must keep a vigilant watch for persons either on the track or moving toward it. Baird v. R. R., 146 Mo. 265; Hilz v. R. R., 101 Mo. 36; Klockenbrink v. R. R., 172 Mo. 686; Winters v. R. R., 99 Mo. 509. The duty to be on the watch is no more than ordinary care under such circumstances. Frick v. R. R., 75 Mo. 395. The servants of the company should be at their posts, observant of the track, and ready at a moment's notice, to avert, if possible, any apprehended danger. McNamara v. R. R., 133 Mo. App. 645. (2) If the engineer or fireman of the defendant, by the exercise of ordinary care, could have warned the deceased of the approach of the train, before she went on the track, negligently failed to do so, the defendant was liable, although the deceased was negligent in approaching and going on the track without learning of the approach of the train. Kinlen v. R. R., 216 Mo. 145. (3) Nor is there any merit in the criticism of plaintiff instruction No 1. The instruction requires that the engineer or fireman should have kept a vigilant look out ahead. This is no greater care than the law demanded under the circumstances. It also informed the jury that if by keeping a vigilant look out ahead said engineer or fireman could, by the exercise of ordinary care, have discovered the deceased approaching the track, in time to have warned her of the approach of said train, and negligently failed to do so,

and if they found from the evidence that if such warning had been given said deceased would not have been struck, they would find for the plaintiff. This instruction requires the engineer or fireman to use ordinary care to warn the deceased! of the approach of the train "before she went on the track." And when the jury were told that it was the duty of the engineer or fireman to use ordinary care to discover the deceased "approaching said track," and warn her of the approach of the train "before she went on the track," the meaning conveyed to the jury was the same as if the words "on the track or going upon it" had been used. Moore v. Transit Co., 194 Mo. 1; Ennis v. R. R., 155 Mo. 20; Bunyan v. R. R., 127 Mo. 13; Barrie v. Transit Co., 119 Mo. App. 38; Murray v. Transit Co., 108 Mo. App. 510; Sepetowski v. Transit Co., 102 Mo. App. 111.

JOHNSON, J.—This action is prosecuted by the mother of Pearl Keele, deceased, to recover damages from defendant on the ground that the death of Pearl, who was a minor in her fifteenth year, was caused by the negligence of defendant. The child was killed about 6:30 p. m. May 7, 1906, at a public road crossing in Kansas, a short distance west of the corporate limits of Argentine. She was on her way home from a soap factory where she worked when she was struck by an east-bound passenger train and instantly killed. Her parents were both living at the time and she had three brothers and two sisters, all minors. This suit was brought in Jackson county by her father and mother. Afterward the father died intestate at his home in Kansas. He left no estate and no administrator was appointed. His death was suggested and afterward the present plaintiff filed an amended petition in which she asserted her right to proceed with the action as the sole party plaintiff, alleging "that plaintiff is the mother, and under the laws of the State of Kansas, is the next of kin of Pearl E. Keele, deceased,

late of Wyandotte county, Kansas, Mathias W. Keele, the father of said Pearl E. Keele, having died since the commencement of this action, and no administrator has been appointed for her estate by any court, and said Pearl E. Keele left no husband or child surviving her.''

In support of her sole right to the cause of action, plaintiff pleaded provisions of the Kansas statutes as follows:

"That by sections 4684, 4685, 4686, 4687 and 2459 of the General Statutes of Kansas, 1899, and same being sections 420, 421, 422 and 422a of chapter 80, article 19, of the General Statutes of the State of Kansas, 1868, and section 2459 of the General Statutes of Kansas, 1899, and same being section 20, chapter 33, of the General Statutes of Kansas, 1868, it is provided as follows, to-wit:

"Sec. 4869. *Actions that survive.* Sec. 420. In addition to the causes of action which survive at common law, causes of action for *mesne* profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same.

"Sec. 4870. Sec. 421. No action pending in any court shall abate by the death of either or both of the parties thereto, except an action for libel, slander, malicious prosecution, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of the defendant.

"Sec. 4871. *An action for death; Limitation, etc.* Sec. 422. When the death of one is caused by the wrongful act or omission of another, the person representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot

exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, of next of kin, to be distributed in the same manner as personal property of the deceased.

"Sec. 4372. *Damages.* Sec. 422a. That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section 422 of chapter 80, Laws of 1868, is. or has been at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in said section 422 may be brought by the widow, or where there is no widow, by the next of kin of such deceased.

"Sec. 2459. *Estate of wife; when to parents.* Sec. 20. If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents.''

Defendant demurred to the petition on these grounds:

"1. Because said amended petition does not state facts sufficient to constitute a cause of action against this defendant.

"2. Because plaintiff has not legal capacity to sue.

"3. Because the plaintiff has not legal capacity to continue and maintain this suit in her own name alone.

"4. Because there is a defect of parties plaintiff in that plaintiff is not entitled to maintain this action alone.

"5. Because said amended petition shows on its face that plaintiff, Mathias Keele, a plaintiff in the original petition in this cause filed has, since the commencement of this action, died, and there have been no proper steps or proceedings taken to suggest the

151 App.—24

death of said plaintiff and revive said cause of action in accordance with the statute of this state.

"6. Because upon the entire record and said amended petition, the court has no jurisdiction of the person of the defendant or the subject-matter of this action."

The demurrer was heard and overruled, after which defendant answered to the merits but alleged as a defense a defect of parties plaintiff. A trial to a jury resulted in a verdict for plaintiff in the sum of $7500. Motions for a new trial and in arrest of judgment were filed and afterwards were overruled on condition that plaintiff remit $3500 from the verdict. This was done and judgment was rendered for plaintiff in the sum of $4000. Defendant appealed.

We shall here dispose of the question earnestly pressed by defendant that there is a defect of parties plaintiff fatal to the maintenance of this action. The cause of action, if any, created by the violent death of the child arose in Kansas and is dependent upon and controlled by the statutes above quoted. In Kansas as in this state "an action for injury resulting in death is maintainable only by the person who is, by the terms of the statute, authorized to maintain it." [City of Eureka v. Merrifield, 37 Pac. Rep. 113; Clark v. Railroad, 219 Mo. 524.] Sections 422 and 422a of the Civil Code of Kansas have exclusive application to actions for damages or loss by death. The first section provides that the personal representative of the deceased may maintain the action for the exclusive benefit of the widow and children, if any, or of the next of kin if there be no widow or children. The succeeding section provides for the maintenance of an action in cases where the deceased was a non-resident of the State of Kansas, or where for any reason no personal representative is or has been appointed in that state. In such cases the action may be prosecuted by the widow, or if there be no widow, by the next of kin, for the benefit

of those named as beneficiaries in section 422. If the deceased be survived by a widow and children and no administrator of his estate be appointed, the widow may prosecute the action in her own name as the sole plaintiff, both for the benefit of her own interest and as the trustee of the interest of her children. [Jones v. Railway, 178 Mo. 528.] But if, as in the case in hand, there be no widow or children and no administrator, the statute preserves the cause of action for the next of kin and they may prosecute it in their own names for their own benefit.

Since Pearl Kelle left no issue, her parents by provision of the Kansas laws (sec. 20) were entitled to the whole of her estate. They were the sole owners of the cause of action and "next of kin" within the meaning of sections 422 and 422a. Each owned a moiety of the cause—an undivided interest therein— and when they joined in an action for the enforcement of the cause, the father appropriated and asserted in the most solemn manner a right to a half interest in the fruits of the action. On his death, intestate, during the pendency of the suit, his interest did not die but descended to his heirs—to his widow and children. By inheritance from their father, the brothers and sisters of Pearl became statutory "next of kin" of the deceased girl and, as such, were necesssary parties to the action. Their mother could not represent their interest as trustee of an express trust for the very obvious reason that the statute (sec. 422a) does not authorize one "next of kin" to represent others of that class in the action as it does in cases such as that considered by the Supreme Court in Jones v. Railway, supra. Under the Kansas laws, where one of the plaintiffs, suing as next of kin, dies during the pendency of the suit, his interest, as we have said, does not abate and it should be represented in the action by those entitled by law to receive its proceeds. The brothers and sisters of Pearl were necessary parties

and should have been represented in the action by their guardian. The learned trial judge erred in overruling the demurrer to the amended petition of the present plaintiff. But we do not regard this error as fatal to the judgment for the reason that defendant, instead of standing on the demurrer, answered to the merits and, thereby, waived the objection of a defect of parties.

The averments of the petition disclose the defect of parties and the rule is well settled that when the defendant fails to demur when the defect appears on the petition or answers to the merits after his demurrer is overruled, he waives the objection though he attempts to renew it in his answer. [State v. Sappington, 68 Mo. 454; Walker v. Deaver, 79 Mo. 664; Horstkotte v. Menier, 50 Mo. 150; Haase v. Distilling Co., 64 Mo. App. 131; Finney v. Randolph, 68 Mo. App. 557.] "The defect, if it was such, appearing on the face of the petition, could be reached only by demurrer, unless it was such a defect as affected the validity of the cause of action, rendering the petition insufficient to support a judgment, in which case the defect could be neither waived nor cured but could be brought up on motion in arrest or during the trial." [Jones v. Railway, supra l. c. 538.] The defect in the present instance does not belong to the exception to the general rule above quoted. The joinder as parties plaintiff of all of the next of kin is not made by the Kansas statute an indispensable prerequisite to the prosecution of the action. If any of the next of kin refuse to be joined as plaintiffs, they may be made parties defendant and the action may be prosecuted by those of the class who do join as plaintiffs. Consequently, the omission of any of the class from the action is not a defect so radical that it cannot be waived. It was waived in this case by the failure of the defendant to stand on its demurrer.

Keele v. Railroad.

Passing to the merits of the case, the material facts disclosed by the evidence of plaintiff (no evidence was offered by defendant) thus may be stated: The unfortunate girl walked south on the "Carlyle road", a public highway running north and south, which crossed defendant's tracks at a right angle. Two of the tracks were used for passenger trains, the south track being that on which eastbound trains were run. South of these tracks and west of the road crossing was an excavation made by defendant, the bed of which was of sandy soil. North of the passenger tracks were tracks for freight trains and for switching and storage purposes. Freight cars were stored on some of these tracks in a way to leave but a narrow passageway at the crossing and there is evidence to the effect that the girl could not have seen the passenger train coming from the west until after she passed through that opening. It is quite certain that the enginemen could not have seen her before that time. She was walking at an ordinary gait and when she emerged from behind the freight cars, was about twenty-five feet from the crossing of the south passenger track, the one on which the train was coming. At that time, the locomotive must have been from three hundred to four hundred feet west of the crossing, since its speed was estimated by the witnesses at from thirty-five to fifty miles per hour. A strong, gusty wind was blowing from the west or southwest, the air near the crossing was filled with sand and dust from the excavation we have mentioned, and the girl, during the time she might have been seen by the engineer, did not look towards the train, but approached the crossing with her face averted and holding the rim of her hat down to shield her face from the stinging dust. The engineer did not blow the whistle nor ring the bell for the crossing. Just as she stepped on the track, the

engine struck her and she was instantly killed. There is evidence that the whistle was blown for a station a mile and half west of the crossing, but no subsequent warning of the approach of the train was given and though there was nothing to prevent the girl from seeing or hearing the train, it is evident she was unaware of its approach. The crossing in question is half a mile west of the corporate limits of Argentine and there was much travel over it.

The facts we have stated are collected from the evidence most favorable to plaintiff. Some are opposed to reasonable inferences that might be drawn from some of the testimony, but since the principal question we are asked to solve is whether or not defendant's demurrer to the evidence should have been given, we shall consider the facts in their aspect most favorable to the cause of action asserted.

On behalf of plaintiff, the jury was instructed as follows:

"You are instructed that even if you find and believe from the evidence that Pearl E. Keele, deceased, was negligent in approaching and going upon the track of the defendant upon which she was struck, without learning of the approach of said train, still if you further find and believe from the evidence that the engineer or fireman of the train, by keeping a vigilant lookout ahead of him could, by the exercise of ordinary care, have discovered said Pearl E. Keele, deceased, approaching said track, in time to have warned her of the approach of said train, before she went on said track, and negligently failed to do so. And if you further find and believe from the evidence that if such warning had been given said Pearl E. Keele, deceased, she would not have been struck, you will find for the plaintiff. And you are further instructed that, in the absence of evidence to the contrary, you may assume that if such warning had been given said Pearl E. Keele, deceased, she would have heard it.

And if you find for the plaintiff in estimating her damages, if any, you should consider all the elements which the evidence shows go to make the life of Pearl E. Keele, deceased, of pecuniary value to the plaintiff; and you are further instructed that there is no exact or uniform rule for measuring the value of the life of Pearl E. Keele, deceased, to the plaintiff, and the amount of your award, if any, is left to your experience and good judgment guided by the facts and circumstances detailed in the evidence, not exceeding the sum of $10,000.

"2. Negligence is the want of due diligence and is the unintentional omission to do something which a reasonably prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or is the unintentional doing of something which a reasonably prudent man, guided by those considerations, which ordinarily regulate the conduct of human affairs, would not do.

"Ordinary care and caution means such reasonable care and caution as a man of ordinary prudence and judgment would exercise under the particular circumstances."

It will be observed that plaintiff relies entirely on the "humanitarian doctrine" for her cause of action. The facts in evidence will not support any other cause, since the contributory negligence of the girl is a fact about which there can be no room for reasonable minds to differ. She had but to look or listen to see or hear the train and had she done either, would not have reached a perilous position. Instead of using her senses for her own protection, she blindly walked into the train. Doubtless the discomfort of facing the strong sand-laden wind was the cause of what otherwise would appear unaccountable negligence, but whatever the cause, her conduct was inexcusable in law and plaintiff cannot recover on account of negligence of de-

fendant that merely operated to place the girl in a position of danger.

The important question is whether defendant was guilty of a breach of its humanitarian duty in the way it operated the engine in approaching the crossing. We think the evidence tends to convict defendant of such negligence. We concede that the engineer and fireman in running a locomotive through rural territory have other duties to perform than that of watching the track ahead and, therefore, cannot be expected to keep an unremitting lookout, but it is their duty to give signals for public crossings and if they fail to perform that duty, they certainly should keep the crossings under observation to guard against the possibility of injuring some endangered traveler. They have no right to rush through the country in populous districts such as the place in question without giving warning signals or keeping a lookout.

But it is argued that the operators of the engine, had they been on the lookout, would have seen nothing to indicate that the girl was in danger until it was too late to save her, even by sounding an alarm. Had there been nothing unusual in the appearance of the pedestrian, we would agree with this argument. Where the pedestrian approaching a crossing is in a position to see and hear the train, the mere fact that he may continue to approach the danger line is no indication that he will not stop in time, and calls for the performance of no duty on the part of the trainmen. It is only where the pedestrian is oblivious of the fact that the train is coming and exhibits in some way his own lack of reasonable care that the humanitarian rule imposes a duty on the operators of the threatening instrumentality to take steps to avoid an injury by stopping the engine or car or by giving warning of its approach. In the present case we think the evidence presents the conduct of the trainmen as an issue

of·fact for the jury to solve. The inference is reasonable that ordinarily careful and humane men in their situation would have discovered the real peril of the girl in time to have saved her by blowing the whistle. Considering the physical discomfort of looking in the direction of the train and the consequent attitude assumed by the girl, reasonable care would have apprehended that she might be unaware of the fact that a train was at hand. In principle the case is similar to that considered in Smith v. Railroad, 129 Mo. App. 413, where we held that a case·of negligence under the humanitarian doctrine was presented by the evidence. We hold that no error was committed by the trial court in overruling the demurrer to the evidence of plaintiff.

But we do find prejudicial error in the first instruction given at the request of plaintiff. In effect, it was a peremptory instruction to find for the plaintiff. It was not enough for the jury to find that an ordinarily careful and humane person in the position of the engineer or fireman should have discovered the girl approaching the track in time to have sounded a warning, but they should have been required to find further that such hypothetical person should have seen that she was oblivious of her danger and if not warned would place herself in the way of the train.

For this error the judgment is reversed and the cause remanded. All concur.