ARTHUR PENNELL, Respondent, v. CHICAGO, ROCK ISLAND and PACIFIC RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, January 30, 1911.

1. **CARRIERS OF PASSENGERS: Railroads: Evidence.** In an action for personal injuries, where plaintiff's statement that the train was not in sight is contradicted by all the witnesses, and by the plain physical fact that the train must have been at or near a point in plain view of plaintiff, and not over sixty feet from the place of collision, the appellate court cannot accord any evidentiary weight to plaintiff's statement.

2. ———: ———. Where plaintiff, had he looked, must have seen the defendant's train in time to have avoided the perilous position in which he discovered himself when too late to avoid injury, his own evidence affords him no cause of action on account of negligence of defendant which may have co-operated to place him in danger.

3. ———: ———: **Humanitarian Doctrine: Burden of Proof.** Under the humanitarian or "last chance" doctrine, the burden is on the plaintiff to prove that defendant's servants saw or should have seen that he was going into a dangerous position, and was unmindful of the danger, and that defendant's ser-

vants had the means at hand for saving plaintiff, and had they made reasonable use of such means they would have saved him. The mere fact that the train causing the injury was being negligently run and struck plaintiff will not support an assumption that the negligence of defendant's servants was such that plaintiff's case should go to the jury.

4. **HUMANITARIAN DOCTRINE: Admission Against Interest.** Plaintiff's testimony, under the humanitarian doctrine that he was giving due attention to his way, and that he looked in the direction of the train causing the injury when at a place only ten or eleven feet from the danger line, is in the nature of an admission against his own interest. This evidence, coupled with the fact that there is no evidence tending to show an appearance of peril, until plaintiff actually entered on the path of the train made it error to overrule defendant's request for a peremptory instruction.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

REVERSED.

*M. A. Low* and *Sebree, Conrad & Wendorff* for appellant.

The court committed error in refusing the demurrer to the evidence. The court committed error in refusing the instruction in the nature of a demurrer offered by the defendant at the close of all the evidence. Schaub v. Railroad, 133 Mo. App. 444; Schmidt v. Railroad, 191 Mo. 215; Green v. Railroad, 192 Mo. 131; Walker v. Railroad, 193 Mo. 453; Stotler v. Railroad, 204 Mo. 619; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 679.

*John L. Wheeler* and *John C. Nipp* for respondent.

The court did not err in overruling defendant's demurrer, and the cause was properly submitted to the jury, and the judgment should be affirmed. Kelley v. Railroad, 75 Mo. 138; Huckshold v. Railroad, 90 Mo. 548, 2 S. W. 794; Donohue v. Railroad, 91 Mo. 357, 2

S. W. 424, 3 S. W. 848; Hilz v. Railroad, 101 Mo. 36, 13 S. W. 946; Harlon v. Railroad, 104 Mo. 381, 16 S. W. 233; Dickson v. Railroad, 104 Mo. 491, 16 S. W. 381; Kenney v. Railroad, 105 Mo. 270, 16 S. W. 837.

JOHNSON, J.—This is an action for damages for personal injuries alleged to have been caused by the negligence of defendant in the operation of one of its trains over a street crossing in Kansas City. The appeal is prosecuted by defendant from a judgment of one thousand dollars recovered by plaintiff in the circuit court where the cause was tried before a jury.

The injury occurred between eleven and twelve o'clock on the morning of December 7, 1908, at the intersection of Tenth and Hickory streets. Tenth street runs east and west and is occupied by four tracks of the Union Pacific Railway Company which are used by trains of defendant as well as by trains of the owner. The engine of a passenger train of defendant coming west from the union station on the main line (which was the third track from the south) struck plaintiff and inflicted the injuries of which he complains. The locality is in a business district and plaintiff, a mechanical engineer, was returning from a business visit to a manufacturing concern. He was a man past middle life but was in good health and in full possession of his senses. He walked with a cane but was not crippled and was active for a man of his age. He states, "I was in very good health and enjoyed very good health and could walk eight or ten miles if necessary. . . . My nervous system was quite good. . . . I was not walking fast; walking about two and one-half miles per hour."

He started to cross Tenth street from the southwest corner of its intersection with Hickory, and proceeded north on the west side of the latter street until he reached the first railroad track, where he stopped to allow an east-bound train on the second track to go by. As soon as that track was clear he resumed his pro-

gress and when on the second track, looked, so he states, east and west on the third track and saw no train approaching from either direction. He went on to the third track, the main line, and then for the first time became aware that a train was coming from the east and was almost upon him. He jumped back but not far enough to reach a place of safety. Some part of the locomotive struck his right leg and threw him away from the south side of the track. Witnesses for plaintiff estimate the speed of the train at eight to ten miles per hour and state that the bell of the engine was not ringing. There were gates at this crossing and a watch tower equipped with a gong to give warning of the approach of trains, but some of the witnesses say the gates were not down and the gong was silent.

Ordinances of the city limiting the speed of trains to six miles per hour and requiring the watchman stationed in the watch tower to give warning of approaching trains were pleaded in the petition and introduced in evidence. The negligence pleaded consists of the acts of running the train at speed in excess of that permitted by the ordinance and in failing to give warning either by ringing the bell of the engine or the gong on the watch tower.

Further it is alleged "that the defendant, its agents, servants and employees, saw, or by the exercise of ordinary care, skill and diligence, could have seen, plaintiff in a position of imminent peril of being struck by said locomotive, and train of cars, upon and in dangerous proximity to said track upon which said locomotive and train of cars were being run and operated, in time, by the exercise of ordinary skill and diligence, to have warned plaintiff of his danger by sounding the bell or whistle, of the approach of said locomotive and train of cars, and of his danger of being struck by said locomotive and train of cars in time, by the exercise of ordi-

nary care, skill and diligence, to have enabled plaintiff to have kept out, or gotten out, of said position of peril."

We have stated the facts in evidence most favorable to the cause of action asserted and in the view we take of the cause find no occasion to refer to the evidence of defendant. We shall concede that the watchman in the tower was negligent in not giving warning and that the operators of the engine were negligent in running at excessive speed and in failing to ring the bell.

But such acts, in so far as they might have operated to lure plaintiff into a perilous position were commingled with negligence of plaintiff himself, the existence of which is indisputably established by his own evidence. At the time he says he looked to the east and saw no train he was about sixteen feet from the center of the main track and some ten or eleven feet from the danger line. At that moment the engine was not over sixty feet from the place of collision and was in plain view since the track was straight and level; there were no obstructions to vision, and it was broad daylight. Plaintiff's statement that the train was not in sight is contradicted by all the witnesses and by the plain physical fact that it must have been at or near the point we have stated. We cannot accord any evidentiary weight to that statement. To do so would be to give credence to what common experience and common sense pronounce impossible. Courts are not bound to give weight to that which has no weight, substance to that which is insubstantial, nor attempt to create something out of nothing. Had plaintiff looked towards the east he must have seen the train and if he failed to see what was in plain sight it was because he did not look. In either event his own negligence was the cause of the perilous position in which he discovered himself when too late to avoid injury. His own evidence affords him no cause of action on account of negligence of defendant that may have cooperated to place him in danger, and we pass to the

question of whether he has a case to go to the jury under the rules and principles of the humanitarian doctrine.

The burden is on the plaintiff to prove that defendant's servants—the operators of the engine or the watchman—saw or should have seen that he was going into a dangerous position and was unmindful of the danger and that they had the means at hand for saving him and had they made reasonable use of such means would have saved him. We have no right to assume from the mere facts that the train was being negligently run and struck plaintiff that defendant's servants were guilty of negligence under the "last chance" doctrine. To support a cause of action founded on such negligence, it must appear affirmatively from the evidence that there was something in the appearance of plaintiff as he approached the track to disclose that he was unaware of the presence of the train and if not specially warned would proceed heedlessly into danger. So far as plaintiff's testimony is in the nature of an admission against his own interest, we take him at his word. He asserts that he was giving due attention to his way and that he looked in the direction of the train when at a place only ten or eleven feet from the danger line. Grant that defendant's servants should have been observing him, what was there in such conduct to suggest to ordinary care that he was oblivious to his real situation? His action showed he knew what he was doing and the engineer certainly was justified in acting on the belief that a man who looked directly at the approaching train and was in apparent possession of unimpaired faculties, would not deliberately walk into danger but would stop in a place of safety. There is no evidence tending to show an appearance of peril until plaintiff actually entered on the path of the train. At that moment the train was not over twenty-five feet from the place of collision and the engineer, had he been never so diligent, could have done nothing to save the unfortunate man. In his zeal to exculpate himself from the imputa-

tion of negligence, plaintiff has pictured a situation free from the suggestion of peril until a time when knowledge thereof would have been unavailing. As we said before, we shall hold him to his admissions and in so doing we say that he cannot hold defendant liable for the failure of its servants to observe a thing his own evidence shows was not open to observation.

The learned trial judge erred in overruling defendant's request for a peremptory instruction. The judgment is reversed. All concur.