LOUISA SCHUPP, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, October 7, 1912.

1. **NEGLIGENCE: Humanitarian Doctrine.** Plaintiff's husband was struck and killed by one of defendant's trains while he was on the track picking up coal. *Held*, that the evidence failed to make out a case under the humanitarian doctrine.

2. ————: ————: **Contributory Negligence.** An engineer seeing a man on the track ahead has the right to assume, until the contrary appears, that the man is observing due care for his own safety and will step out of the way in time.

3. ————: ————: **In Peril.** It is not sufficient, in order to recover under the humanitarian doctrine, to show that the engineer actually saw the deceased in time to have stopped or checked the train, but it must be further shown that the engineer discovered that he was in peril in time to have avoided striking him.

Appeal from Chariton Circuit Court.—*Hon. Fred L. Lamb,* Judge.

REVERSED AND REMANDED.

*J. L. Minnis, J. C. Wallace* and *Guthrie & Franklin* for appellant.

*John D. Taylor, Gilbert Lamb* and *John T. Barker* for respondent.

BROADDUS, P. J.—The plaintiff is the wife of George Schupp, deceased, who was killed by one of the defendant's trains near Brunswick, Missouri, on the 13th day of December, 1908. She claims that his death was the result of defendant's negligence, for which she claims damages under the statute in the sum of $10,000. She recovered judgment for $6000, from which defendant appealed.

There are two tracks at the point where deceased was killed, running parallel, about eight or ten feet apart, and there separating the south line curving westward, and the north line turning to the northwest. The plaintiff claims that her husband was struck while walking on the south track, facing west, meeting the train. On the other hand, defendant claims, that when the train approached from the west deceased was on the north track picking up coal and putting it into a wheelbarrow that was between the tracks; that when the train approached, he saw the train and mistook which track it was on, and immediately stepped to his wheelbarrow, took hold of the wheel end of it and moved it toward the south track, on which the train was coming; and that in so doing he stepped a little too close to the south track and was hit by the pilot of the engine and killed.

The deceased resided in Brunswick, and his son was in the employ of the defendant as a section man. It was shown that the defendant gave its employees permission to gather coal scattered along its tracks. On the morning of the day mentioned, the deceased, at the request of his son, went on the railroad tracks near the western limits of the town for the purpose of picking up coal to be used in his son's house. There was a well-beaten footpath at the point where the deceased was struck, which had been used by the traveling public for many years. The track was level and straight enough for him to have been seen by the engineer for 1000 feet as the train approached.

The only eye witnesses to the occurrence were the
engineer and fireman, and a Mr. Shepherd and his
wife.  It appeared by the evidence that the Shepherds
were sitting on the front porch of their residence,
fronting south, about three-quarters of a mile away.
Their residence is on the side of a hill elevated about
300 feet above the track.  At the time a man by the
name of Willis was also on the porch.  Mr. Shep-
herd's testimony is, that he saw the approaching train
when it was at DeWitt, several miles away, and he
also observed at the same time a man walking on the
south track who "every once in a while it looked like
he would stoop down and pick up something and
when the train came across the bridge he was right
in the middle of the track, like he was walking down
the middle of the track; he never left the track until
the train struck him.  At the time the train left De-
witt he was bent over—sidelike—he was picking up
something—I couldn't say what he was picking up.
He was not looking at the train—he was bent over.
I could not say how long he was on the track, but he
was on it from the time the train left Dewitt until it
struck him.  He never done anything to indicate that
he knew the train was coming.  I never seen him make
any kind of move like anything bothered him. . . .
No signal was given at all, until just about the time
the train struck him and then there was two short
whistles."     Mrs. Shepherd's evidence corroborates
that of Mr. Shepherd in all essential particulars.

The evidence of defendant's fireman was to the
effect, that he was attending to firing the engine and
did not see deceased until the engineer gave a whistle,
when he looked up and saw the man with a wheelbar-
row between the two tracks, who looked as if he was
trying to pull it across; that when the engineer "com-
menced whistling the man ran around to the other
track, then ran back to our track and started to get
the wheelbarrow and just as he got to the edge of the

track when the pilot beam struck him." At the time the engineer commenced sounding the whistle the witness stated that they were in about fifty or sixty yards from the man.

The defendant's engineer, who was operating the train in question, testified, that it was running at about the rate of thirty-five miles per hour, and that as the train approached the Grand River bridge and at a distance from it of about 200 yards he gave the usual signal; that in passing through the bridge the track is straight for a short distance, then curves to the right or south; that he noticed, when he got up to the curve, a man ahead; that he did not pay any attention to the man at the time, "for the simple reason, there are men along the track every place, trespassers and trackmen, but getting closer I noticed that this man had a wheelbarrow, and he was at the—when I got close enough to see about where he was, he was on the north or high line track, and I knew, or supposed, almost positive, in the position he was that he knew where he was at, and he was perfectly clear of the track that we were on." He stated that at that time the man was about 100 yards distant; that he saw the man grab the wheelbarrow by the wheel in front and instead of pulling it away to the north he pulled it to the track he was on; that immediately he grabbed the whistle, shoved on the emergency brake and did all he could to stop, as he knew the man would not clear the pilot if he persisted in pulling his wheelbarrow to the south; that when he was struck he could not see him because the boiler obstructed his view.

There was evidence offered by defendant tending to contradict Shepherd and his wife. The train was running on time and deceased lived near the track, and knew that the train was due.

The plaintiff sought to recover on the ground that the engineer of defendant saw or could have seen the deceased in a position of peril on the track in time to

have avoided striking him. The fact is, that the engineer actually saw the deceased at a sufficient distance to have stopped or checked the train before it reached him. But it was necessary to further show that the engineer discovered that he was in peril in time to have avoided striking him.

According to the evidence of Shepherd and wife, deceased was on the track and appeared oblivious to the fact that a train was approaching. But no credit should be given to that part of their evidence. It was impossible, at the distance of three-fourths of a mile away, that they could see that deceased was acting as if he was unconscious of the fact that there was a train coming from the west, facing him; especially when we consider the further statement that they could not tell that he had a wheelbarrow and what he was picking up. It was possible, however, for them, at the vantage of their position of 300 feet elevation above the railroad tracks, to have discovered which of the two tracks the deceased was on at the time. No one, even had he been present, could have told from the manner of deceased, as far as disclosed, whether or not he was unaware of danger. Had he been on the track, of which there is grave doubt, facing the coming train, in plain view, and notwithstanding he was stooping and supposedly picking up coal, he could not have helped seeing or hearing the train, and the only natural inference would be that he would get out of the way. To believe otherwise is impossible, unless the person was both blind and deaf. The engineer had the right to infer that deceased would both see the train and hear its rumbling, and get out of danger. There must have been something in the conduct of the deceased to indicate to a person of ordinary prudence that he was not aware of his peril before the engineer was called upon to slacken the speed of, or stop his train.

It is held that, ''an engineer seeing a man on the track ahead of him has the right to assume, until the contrary appears, that the man is observing due care for his own safety and will step out of the way in time.'' [Veatch v. Railroad, 145 Mo. App. 232; 3 Elliott on Railroads, sec. 1153; Pennell v. Railroad, 153 Mo. App. 566.]

The plaintiff relies on the holding in Smith v. Railroad, 129 Mo. App. 413, and like cases to sustain the judgment. In that case, it is true, plaintiff was going on defendant's track facing the coming train, and was struck and injured. But it was shown that the day was cold and a snowstorm was in progress and the plaintiff had his head wrapped up and he was walking in a bent position, all of which the defendant's engineer could have discovered in time to have averted striking him.

In Murphy v. Railroad, 228 Mo. 56, the deceased was drunk, sitting on the end of a tie, a short distance from defendant's station in the town of Kirksville, in plain view of the engineer for a long distance, with his body partly bent over one of the rails of the track. The court held that there was sufficient evidence for a case for the jury under the humanitarian rule.

In Ahnefeld v. Railroad, 212 Mo. 280, the deceased, an old man, was walking along the track leisurely, the train of defendant following, struck and killed him. The evidence disclosed that no effort was made to warn him of his danger until the engine was in a few feet of him, and the speed of the train was not slackened. The plaintiff was allowed to recover. In all the cases cited there was some fact or circumstance shown to exist that would put a prudent man on guard in time to have avoided the danger.

The plaintiff failed to make out a case under the humanitarian rule and the court erred in refusing to

sustain defendant's demurrer and instruct the jury ac- cordingly. Reversed. All concur.

On motion for rehearing modified so as to reverse and remand.