MARY E. LEWIS, Appellant, v. METROPOLITAN STREET RAILWAY COMPANY, ROBERT J. DUNHAM and FORD F. HARVEY, Receivers of said STREET RAILWAY COMPANY, Respondents.

Kansas City Court of Appeals, July 6, 1914.

1. **NEGLIGENCE: Automobiles: Humanitarian Rule.** Where a street car collided with an automobile crossing the track at a street intersection, plaintiff suing therefor on the humanitarian doctrine is not entitled to go to the jury unless there is evidence tending to show that after the motorman knew or ought to have known that the automobile was going into danger, he had reasonable time to avoid the collision and negligently failed to do so.

2. ————: ————: **Crossing: Assumption That Person Will not go Into Known Danger.** Where the occupants of the automobile gave every indication to the motorman that they were aware of the danger as the automobile approached the track and still in a place of safety, the motorman had a right to assume that it would stop and not go into danger, and having that right he was not required to stop or reduce the speed of his car until the contrary became manifest. And unless the contrary manifested itself in time to enable him by the exercise of ordinary care to stop or reduce the speed of his car with safety to his passengers and thereby avoid the collision, defendant cannot be held liable. And the burden of making out a case is on plaintiff.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*Edward P. Garnett* and *Chas. V. Garnett* for appellant.

(1) The court erred in taking this case from the jury. Waddell v. Street Railway, 113 Mo. App. 680; Strauss v. Street Railway, 166 Mo. App. 153; Flynn v. Street Railway, 166 Mo. App. 187; Dutring v. Tran-

sit Co., 115 Mo. App. 667; Taylor v. Railroad, 26 Mo. App. 336; Murray v. Transit Co., 108 Mo. App. 501; White v. Railroad, 202 Mo. 539; Eckhard v. Transit Co., 190 Mo. 593; Storn v. Transit Co., 108 Mo. App. 424.   (2)  Plaintiff was in the danger zone when the motorman first saw her approaching the track under the circumstances.   Ellis v. Street Railway, 234 Mo. 680; Powers v. Transit Co., 202 Mo. 281; Holmes v. Railroad, 207 Mo. 149; Story v. Transit Co., 108 Mo. App. 424; Bavin v. Transit Co., 119 Mo. App. 42; S. C. 102 Mo. App. 87; Ross v. Street Railway, 113 Mo. App. 600; Dischner v. Railroad, 200 Mo. 329.   (3)  It was the duty of the defendant's motorman to keep a vigilant watch for persons and vehicles approaching at street crossings and to keep his car under constant control.   The Street Railway Company has no exclusive' or superior rights to the streets of a city over the citizen.   Studer v. Transit Co., 189 Mo. 136; Rapp v. Transit Co., 190 Mo. 144; Deschner v. Railroad, 200 Mo. 329; Grant v. Railway Co., 125 Mo. App. 552; Cole v. Street Railway, 121 Mo. App. 605; S. C. 133 Mo. App. 440; McNamara v. Street Railway, 133 Mo. App. 651.

*John H. Lucas* and *John P. Bramhall* for respondents.

(1) The trial court did not err in sustaining the demurrer to plaintiff's testimony.  McGanley v. Transit Co., 179 Mo. 583; Theobald v. Railroad, 191 Mo. 395; Riggs v. Railway Co., 216 Mo. 304; Senn v. Railroad, 108 Mo. l. c. 151; Veach v. Railway Co., 129 S. W. 406; Markowitz v. Railroad, 186 Mo. 350; Mockowik v. Railroad, 196 Mo. 550.  (2) The plaintiff was guilty of contributory negligence.  Rose v. Railroad, 113 Mo. App. 605; Boyd v. Railroad, 105 Mo. 371; Kinlen v. Railroad, 216 Mo. 164.

TRIMBLE, J.—Plaintiff, in her automobile with two daughters and a chauffeur, was riding west on 27th street. She was in the back seat on the right hand or north side. One daughter sat on her left. The other daughter was in the front seat on the right at the steering wheel learning to drive. She had had but two hours previous experience. The chauffeur sat on the front seat on the left of this daughter. There was an understanding between them that whenever the chauffeur laid his hand upon the wheel, the girl was to resign the wheel and exchange seats with him. This would be done by him rising and she sliding along the seat into his place and he seating himself where she had been.

Troost avenue runs north and south and crosses 27th street at right angles. There are two street car tracks in the center of Troost avenue, the eastern track being the one used by north bound cars.

As plaintiff's automobile was crossing this track a north-bound street car collided with it injuring plaintiff and damaging the automobile for which the present suit is brought in the sum of $2500.

Plaintiff's theory is that she is entitled to recover on the humanitarian doctrine. The trial court, after hearing plaintiff's evidence, sustained a demurrer and instructed the jury to find for defendant. A motion for a new trial was filed which the court overruled, and plaintiff has appealed.

As applied to the facts in this case, plaintiff is not entitled to go to the jury unless there is evidence tending to show that after the motorman knew or ought to have known that the automobile was going into a place of danger, he had reasonable time to avoid the collision and negligently failed to do so. Until he had, or ought to have had, reasonable grounds to believe that the occupants of the automobile were oblivious to their danger and were going into it, he was under no obligation to stop or reduce the speed of his car. If the oc-

cupants of the automobile gave every indication to the motorman that they were aware of the approach of the car and of the danger therefrom, *as the automobile approached the track,* then the motorman had a perfect right to assume that the automobile would stop in a place of safety and would not enter into danger on the track, and, having the right to assume that, he was not required to stop or reduce the speed of his car until the contrary became manifest. Now, unless the contrary manifested itself in time to enable him by the exercise of ordinary care to stop or reduce the speed of his car and thereby avoid the collision, with safety to his passengers, defendant cannot be held liable. And the burden is on plaintiff to show that the motorman had time to avoid the collision after such manifestation.

The daughter who was driving the car testified that when the automobile was fifty feet from the track, her mother called to her that the street car was coming; that the car was then 100 feet away and coming very rapidly. Evidently the chauffeur and the daughter, as well as the mother, anticipated danger from the car because the moment the mother warned the daughter of the car, the chauffeur took hold of the wheel rose in his seat and exchanged places with the girl. She says this was done when the car was fifty feet from the track, and of course the car was in a place of safety then and continued to be for at least forty feet more. There is no evidence as to how fast the automobile was going, but we may infer it was not going very fast as it had been recently purchased, the young lady had had only two hours previous experience in running it, and, as the engine was still running after the street car struck it, as soon as the automobile was released from the car it started off, and, upon failure of the chauffeur to control it, the young lady seized the wheel and turned it until the chauffeur recovered himself and threw off the power.

The other daughter said her mother yelled to her sister warning her of the street car; that she herself was looking down and did not see the chauffeur and her sister change seats. She then testified, in answer to the question how close was the automobile to the track when she saw the car 100 feet away, "why I think it was just approaching the street car, just on the track." But she immediately afterwards said the automobile was not on the track but coming up toward it and couldn't remember where the automobile was when she first saw the car and couldn't say how far it was from the track. Of course the automobile could be said to be just approaching the track when it was within fifty feet of it. And inasmuch as the mother testified the street car was 150 feet away when she first saw it and she then rose up and called to her daughter at the wheel and that daughter says that the car was then 100 feet away when she first saw it, and the present witness was looking down and did not see the change at the wheel nor the street car till afterward, then evidently the street car was nearer than 100 feet to the crossing when she saw it or else the automobile was not "right up to the track" but was back nearer where the other two ladies said it was. The automobile was struck in the middle; there was no stoppage of the automobile on the track; and plaintiff's witnesses say the street car was going only ten miles per hour. Consequently, when the automobile got "right up next to the track" the street car must have been very much closer than 100 feet as it could not have traversed that distance while the automobile went only half its length.

Plaintiff testified that when she first saw the car it was 150 feet away; that she "raised up" and said "here comes the car" and the two in front changed seats, and when she saw the car was getting so near it made her nervous and she rose again in the car and waved her handkerchief. On cross-examination she

said that she warned those in charge of the automobile when it was fifty feet from the track and that the car was then 100 feet or more away; and that *just about when* they were to enter on the track or *something like that* she waved her handkerchief at the street car; and at this time the car was crossing the street. The street referred to was 27th and as plaintiff's automobile was in the middle of that street then the street car was only half the width of that street away *when or just about when* the automobile was about to enter upon the track. As the occupants of the automobile gave every indication that they saw the car and were alive to its danger, the motorman had a right to believe that they would not leave a place of safety and enter a place of danger until the car was about to enter upon the track and the handkerchief was waived. After that he had to take in the situation, coordinate his muscles and stop the car, going at ten miles an hour, in the time it took the automobile to go half its own length. This is too short a time. Human beings cannot be expected to act with the speed of electricity. Nor will it avail anything to attempt to lengthen the time in which the motorman had to act by claiming the automobile was or may have been going very slow. The slower it went the greater reason the motorman would have for thinking it was going to stop before it entered upon the track. Ten miles an hour would not be fast, and five miles an hour would be a snail's pace for an automobile, but even if the automobile was going at this slow rate it could travel fifty feet while the street car was going 100. So that in going the exceedingly few feet intervening between the danger line and the middle of the automobile, the street car could not have travelled the great distance plaintiff must show that it did in order to make out a case. Unless there is evidence to show that the motorman knew or ought to have known that plaintiff would go into danger in time to have enabled him to avoid the collision by the exercise of ordinary

care, she cannot recover. [Veatch v. Wabash Railroad Company, 145 Mo. App. 232; Haffey v. Met. St. Ry. Co., 154 Mo. App. 493, l. c. 495; Guyer v. Mo. Pac. Ry. Co., 174 Mo. 344, l. c. 350; Van Bach v. Mo. Pac. Ry. Co., 171 Mo. 338; Boring v. Railroad, 194 Mo. 541, l. c. 552; Roenfeldt v. St. Louis & Suburban Ry. Co., 180 Mo. 554.]

The action of the learned trial court was right, and the judgment must be, and is, affirmed. All concur.