ESPERANZA VADELL, as Administratrix of the Estate of ANTONIO VADELL, Deceased, Respondent, *v.* LONG ISLAND RAIL ROAD COMPANY, Appellant.

First Department, June 24, 1958.

*William F. McNulty* of counsel (*William J. O'Brien* with him on the brief; *Otto M. Buerger,* attorney), for appellant.

*Herman Mendes* of counsel (*Jerome Heffer* with him on the brief), for respondent.

VALENTE, J. The intestate was killed on the night of September 30, 1953 when an automobile which he was driving came in contact with one of defendant's electric trains at a grade crossing in the village of Freeport, Long Island. In an action to recover damages for wrongful death, a jury returned a verdict in favor of plaintiff administratrix in the sum of $45,000.

Defendant appeals from the judgment, as well as from an order denying its motion to set aside the verdict and to direct judgment in its favor. We have concluded that the verdict was against the weight of the credible evidence and that there must be a new trial.

The accident occurred at about 9:30 o'clock on a clear night. At the time, the decedent, who had come from New York City, was proceeding north along Brookside Avenue in Freeport, on his way to Merrick. Seated in the front seat with the driver were two females. Directly next to him was 15-year-old Ofelia Elias, and on her right, 30-year-old Marta Abascal. As a consequence of the accident, Ofelia Elias was seriously injured and Mrs. Abascal was killed.*

From the evidence, it seems improbable that the intestate could not have seen or heard the approaching train had his mind and eyes been on the roadway in front of the automobile. There was nothing to obstruct his view to the east, the direction from which the train was approaching the crossing.

Moreover, the proof as to operation of the red flasher lights at the railroad crossing not only established that the signalling devices conformed with the requirements of the Public Service Commission, but that they were in good working order at the time of the accident. The deposition of Ofelia Elias, in which she answered the question as to whether she saw any warning lights, with the statement, "I didn't see anything", is at best equivocal. Yet that is mainly the substance of plaintiff's evi-

---

* An autopsy of the intestate disclosed the presence of 0.116% of alcohol in his brain. There was also testimony that after the accident a pint bottle of partly consumed whiskey was found on the floor of the automobile under the driver's seat.

dence to offset the otherwise convincing proof that the lights were working properly at the time of the accident.

If, as we believe, the evidence established contributory negligence on the part of the driver of the automobile, then the verdict could only be sustained on the theory of "last clear chance", on which the court below charged the jury. In *Kumkumian* v. *City of New York* (305 N. Y. 167, 173), the court in referring to the last clear chance doctrine said: "We have noted that this doctrine does not apply unless there is present an issue of contributory negligence (*Lee* v. *Pennsylvania R. R. Co.*, 269 N. Y. 53, 55). There must be a time sequence — an interval in which plaintiff's act of negligence is complete and in which defendant has an opportunity to avert the disaster (*Panarese* v. *Union Ry. Co.*, 261 N. Y. 233). Where defendant thus had a last clear chance to avoid the accident, it may be said that plaintiff's negligence is not the proximate cause of his injury (*Bragg* v. *Central N. E. Ry. Co.*, 228 N. Y. 54)."

Although the abbreviated charge to the jury on "last clear chance" may have been correct insofar as it enunciated general abstract legal principals, there was no attempt to focus the attention of the jury on the relevant particulars of the evidence in the case before them so as to enable them to apply the doctrine intelligently.

As was said by CARDOZO, Ch. J., in *Woloszynowski* v. *New York Cent. R. R. Co.* (254 N. Y. 206, 208–209): "The doctrine of last clear chance, however, is never wakened into action unless and until there is brought home to the defendant to be charged with liability a knowledge that another is in a state of present peril, in which event there must be reasonable effort to counteract the peril and avert its consequences (*Wright* v. *Union Ry. Co.*, 224 App. Div. 55, 250 N. Y. 526). Knowledge may be established by circumstantial evidence, in the face even of professions of ignorance (cf. *Bragg* v. *Central New England Ry. Co.*, 228 N. Y. 54), but knowledge there must be, or negligence so reckless as to betoken indifference to knowledge."

Moreover, when knowledge was brought home to the defendant and whether he then acted in a manner reasonably calculated to prevent disaster are questions of fact for the jury. (*Chadwick* v. *City of New York*, 301 N. Y. 176, 181; *Noseworthy* v. *City of New York*, 298 N. Y. 76, 79.)

We find that the proof does not support an inference that defendant had knowledge of the peril in time for the engineer to have used reasonable efforts to avert the danger and the consequences. Certainly the intestate was not in a position of peril until he started to cross the tracks. The engineer had every

right to assume that an automobile approaching the grade crossing would observe the danger signals at the crossing and bring his vehicle to a stop before it reached the tracks. And so the court charged the jury in this case.

The question then for the jury was whether the engineer in the face of the situation created by the intestate's negligence in not bringing his car to a stop when it reached the tracks, made a reasonable effort to counteract the peril thus created by the intestate. Considering the time element involved, the probable speed of the train and the physical limitations on the power of an engineer to bring a 12-car train to a stop in time to avert a collision, the jury's verdict, if based on the doctrine of last clear chance, was clearly against the weight of the credible evidence. Whether, as the engineer testified, he applied the brakes when 150 feet east of the crossing or as the witness Gross stated, at one point, when 300 to 400 feet from the crossing, it is apparent that at the rate the train was traveling it could not have stopped in much less than 1,000 feet. But we are not at liberty to decide as a matter of law that the testimony of the engineer and the witness Gross is conclusive. That testimony still must be subjected to the test of credibility by a jury. (*Chadwick* v. *City of New York, supra,* p. 181; *Clarke* v. *City of New York,* 295 N. Y. 861.) In the present state of the record, however, the proof is not susceptible of a proper inference that when the intestate failed to bring his car to a stop, the engineer of the train could reasonably have done anything to avert the ensuing catastrophe. And as the Court of Appeals said in *Panarese* v. *Union Ry. Co.* (261 N. Y. 233, 236–237): '' It is what the defendant did or failed to do after acquiring knowledge of the peril that constitutes the breach of duty.''

For the reasons stated, the judgment and order should be reversed and the verdict set aside, on the law and the facts, as contrary to the weight of the evidence, and a new trial granted, with costs to abide the event.

BREITEL, J. P., RABIN, FRANK and STEVENS, JJ., concur.

Judgment and order unanimously reversed and the verdict set aside, on the law and on the facts, as contrary to the weight of the evidence, and a new trial ordered, with costs to abide the event.