Joseph Modugno, J.
This is a claim for damages in the amount of $250,000 for the wrongful death of Robert W. Hayes.
On June 15, 1973 at approximately 10:45 p.m., the deceased was struck by a Long Island State Parkway Police car operated by Patrolman Fred .Schuster. Patrolman Schuster was proceeding west, at about 55 miles per hour, ón Ocean Parkway *386 in the vicinity of Oak Beach, ¡Suffolk County, New York, when the accident occurred. Ocean Parkway is a four-lane divided highway providing two lanes for eastbound traffic and two lanes for westbound traffic. No lights span the parkway, which has a posted speed limit of 55 miles per hour. Patrolman Schuster was traveling in the left lane behind several cars. In order to pass the cars, which were turning left, he pulled into the right lane. As he did ,so, he saw something lying lengthwise on the road in front of him. He immediately applied his brakes, but struck the object driving over it. He promptly turned his vehicle around to ascertain the identity of the object he had struck. "When he returned to the scene of the collision he saw that the object was a person, namely, the decedent and he radioed for assistance.
A subsequent autopsy certified the cause of death as “ Multiple and Extensive Injuries * * * Apparently Accidental. Pedestrian Struck By One or More Vehicles.”
As can be seen, a portion of the autopsy report has been deleted. At the trial claimant’s counsel moved to exclude from evidence any refernce to the alcohol analysis of the deceased’s blood or urine. The court reserved decision on that motion. Having now reviewed section 674 (subd. 3, par. [b]) of the County Law and the Court of Appeals findings in Cook v. Town of Nassau (33 N Y 2d 7), it is this court’s ruling that any reference to the alcohol analysis is inadmissible as evidence and shall be excluded from the trial record. Accordingly, that portion of the autops.y report referring to the alcohol analysis has been deleted.
The State is, of course, liable under the theory of respondeat superior for the negligence of its agents or employees. (Paige v. State of New York, 269 N. Y. 352.) Patrolman Schuster was an employee of the State on duty at the time of the accident. Hence the State can ¡be held liable for his negligent acts committed within the scope of his . employment.
Undeniably, a motorist has a duty to exercise ordinary reasonable care in the operation of an automobile to prevent injury to those lawfully on the highway. (Lo Giudice v. Riedel, 32 A D 2d 950; Spinelli v. Licorich, 24 A D 2d 172; Loeb v. United Traction Co., 24 A D 2d 917.) Since an automobile is potentially a great danger to a pedestrian, a motorist must use that care which is commensurate with the dangers to be anticipated. Furthermore, he must exercise that care which a reasonably prudent man would use under similar circumstances. Yet, for actionable negligence to result a pedestrian must show that he exercised *387 due care and that his injury was proximately caused by the motorist’s negligence. (Weber v. City of New York, 17 N Y 2d 790, affg. 24 A D 2d 618; Naeris v. New York Tel. Co., 5 N Y 2d 1009, affg. 6 A D 2d 196; Maloney v. Kaplan, 233 N. Y. 426; Goodman v. Gilligan, 280 App. Div. 767; French v. Colamaio, 56 Misc 2d 471.)
A motorist is not an insurer of a pedestrian’s safety and ordinarily the mere fact that a pedestrian is injured raises no presumption of negligence. (Lenti v. Cohon, 16 N Y 2d 796.) Therefore, a motorist is not liable for injuries to a pedestrian in an inescapable accident where he is unable to avoid striking the pedestrian. (Wilson v. Maiello, 34 A D 2d 221.)
After a thorough review of the evidence adduced at the trial, it is this court’s conclusion that Patrolman Schuster’s action did not constitute negligence. Confronted with a situation which he could not have possibly foreseen, he reacted in a reasonable and prudent manner by immediately applying his brakes in an attempt to avoid collision. Taking into consideration the unlit condition of the roadway, the speed of the patrol car, the time of night and unlikelihood of finding a person lying in the roadway, it would appear that this unfortunate accident could not be avoided.
Possibly there was contemporaneous negligence. However, when the negligence of two persons is contemporaneous and the fault of each operated directly to cause the injury neither can recover from the other. (Panarese v. Union Ry. Co., 261 N. Y. 233; Hernandez v. Brooklyn & Queens Tr. Corp., 284 N. Y. 535.)
At most there may have been an error of judgment in an emergency so sudden and immediate that seconds made a difference, but that alone does not constitute negligence. (Wilson v. Maiello, 34 A D 2d 221, supra, citing Woloszynowski v. New York Cent. R. R. Co., 254 N. Y. 206, 209; Polk v. New York Cent. R. R. Co., 10 A D 2d 703, 704, affd. 8 N Y 2d 1106.)
Even if this court were 'to find negligence on the part of the officer, the facts presented certainly raise serious questions as to the proximate cause and contributory negligence. The deceased was lying on the roadway, late at night, in violation of the Long Island State Park Commission Ordinance, Rules and Regulations, which excluded pedestrians from the use of the parkway. His mere presence there is highly suggestive, if not indicative, of contributory negligence. This court makes that statement being well aware that in a death case a claimant is not held to as high a degree of proof as in the normal negli *388 gence action-and that .he is entitled to the benefit of every favorable inference which can be drawn from the evidence. (Andersen v. Bee Line, 1 N Y 2d 169.)
However, even if this court were to go one step further and find the deceased free of contributory negligence the. hurdle of proximate causation has not been overcome by the claimant's evidence.
The proximate cause of the accident was not the action of Patrolman Schuster, but the presence of the deceased lying in an unlit roadway late at night. Unquestionably the presence of. the deceased in that roadway was the competent producing cause of his death.
Obviously the “ last clear chance ” doctrine does not apply since there was no time sequence or interval in which the decedent’s act of negligence was complete and in which the officer in the .exercise of reasonable care had an opportunity to avert the disaster. (Panarese v. Union Ry. Co., 261 N. Y. 233, supra; Vadell v. Long Is. R. R. Co.,6 AD 2d 88.)
Finally the most devastating blow to the claimant’s case was delivered by Dr. Irving Rappaport, the doctor who performed the autopsy. He testified that the deceased had been struck by more than one vehicle and that the deceased was dead prior to being struck by the patrol ear.
Based on the above findings this court has no alternative but to dismiss this claim.
Fortunately a determination of whether the deceased was. intoxicated-was not essential in reaching a decision in this case.. However, in certain situations said determination would not merely be relevant, but vital in adjudicating a wrongful death claim. Prior to the passing of section 674 of the County Law, case law permitted introduction of evidence of all the autopsy report including the quantitative tests for alcohol. (Hayes v. City of New York, 23 A D 2d 832; lovino v. Green Bus Lines, 277 App. Div. 1002.) Those rulings were in accord with general principles favoring disclosure of relevant facts where, as here, there was no privilege.
At common law if the intoxication directly contributed to the injury, recovery was barred. (Rodak v. Fury, 31 A D 2d 816, citing Monk v. Town of New Utrecht, 104 N. Y. 552; Fardette v. New York & Stamford Ry. Co., 190 App. Div. 543.) Furthermore, where only one inference could be drawn under the circumstances, the court could decide as a matter of law whether or not the decedent’s inebriated condition substantially contributed to the accident. (Rodak v. Fury, supra, citing Monk *389 v. Town of New Utrecht, supra; Moyer v. Lo Jim Cafe, 19 A D 2d 523, affd. on other grounds 14 N Y 2d 792; Keefer v. Daum, 262 App. Div. 1044.)
Now, section 674 of the County Law has effectively taken the only analytical test of intoxication out of the realm of court and jury; and in so doing has lowered the horizon and traditional .standards of justice under the law. Certainly there have been and will continue to be wrongful death actions in which the intoxicated condition of the deceased either contributed to or possibly even caused his death. To withhold alcohol analysis tests in those cases is not only unfair, but irrational. Undoubtedly said tests could have a prejudicial effect on a jury or Judge; yet, to withhold such relevant evidence for fear of a possible detrimental effect is unwarranted.
Certainly the alcohol analysis of the deceased’s 'blood in this case was relevant. Said analysis showed .22% alcohol present, indicating a state of high inebriation. Had the analysis been allowed in evidence, it would have provided this court with a reasonable explanation for the deceased’s presence in the roadway. Absent such evidence, the court was required to draw inferences and rely on other evidence in reaching its determination. Surely this was not the Legislature’s intent in passing section 674 of the County Law. Hopefully this issue will be clarified by the State Legislature through appropriate amendments to section 674 of the County Law.
The State’s motions for dismissal are hereby granted.